Frank **LYNCH** et al., Appellants,

v.

**SOUTHERN COAST DRILLING COMPA-
NY, Inc., et al., Appellees.**

No. 14726.

Court of Civil Appeals of Texas.

San Antonio.

June 11, 1969.

James F. Gardner, Dibrell, Gardner & Dotson, San Antonio, for appellants.

Lewright, Dyer & Redford, Corpus Christi, Morriss, Boatwright, Lewis & Davis, San Antonio, for appellees.

CADENA, Justice.

This is an appeal by Frank Lynch, Elenora Lynch and Edward R. Fitzsimmons, three of several defendants below, from a judgment declaring that an oil and gas lease, of which they were the assignees, had terminated because of the cessation, after expiration of the primary term, of production of oil or gas. Of the other defendants, only Rollert-Waddell Company, appearing here as an appellee in defense of the judgment, which declares that its lease is in full force and effect, is before this Court. The other two appellees, Southern Coast Drilling Company, Inc., and J. W. McCormick, Jr., were plaintiffs below.

The lease declared terminated by the judgment below was executed in 1952 by Carl Appling, lessor, to J. Kenneth Blackmar, lessee, whose interest, by mesne conveyances, subsequently became vested in appellees. According to its terms, the lease was to remain in effect for a primary term of five years, "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

The appeal is predicated on the asserted errors of the trial court in denying appellants' motion for continuance and in overruling their special exceptions to plaintiffs' pleadings.

The motion for continuance was based on the fact that none of appellants, all of whom were residents of California, would be able to be present and testify during the trial in Guadalupe County. According to the motion, the affidavit of appellant Fitzsimmons attached thereto, and the testimony of appellants' counsel given at the hearing on the motion, the appellants, if present, would give the following testimony:

(a) Appellant Fitzsimmons would testify that by agreement dated March 28, 1963, the lessor, in consideration of payment to him of compensatory royalty by appellees, acknowledged that the 1952 lease was not, and had never been, in default. Further, Fitzsimmons would testify that he had never been given notice that lessor considered that appellees had failed to discharge their obligations under the lease.

(b) Appellant Frank Lynch would testify concerning remedial work performed on the leased premises, and that he had received no notice from lessor claiming an alleged breach of the terms and conditions of the lease.

(c) Appellant Elenora Lynch would testify with reference to a conspiracy by persons, other than appellees, to divert the assets of Frank and Elenora Lynch, including their interest in the 1952 lease, and that she never received notice from lessor claiming breach of the lease agreement.

Plaintiffs' claim that the interest of appellants in the 1952 lease had terminated was based on the fact that for a period of time prior to December 7, 1963, after the expiration of the primary term, there had been no production of oil or gas on the leased land. Pertinent portions of the lease instrument provide as follows:

(a) If, for any reason, production of oil or gas should cease after the expiration of the primary term, lessee was given the right, at any time within ninety days after such cessation of production, to resume drilling operations in an effort to restore production. If such reworking operations were begun within the specified period, the lease was to continue in effect as long as such operations were being continuously prosecuted, and if such operations resulted in production of oil or gas, the lease would remain in effect so long as such production continued.

(b) Should lessor consider that lessee had not complied with his obligations under the lease, lessor "shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract." After providing that lessee should have sixty days after receipt of such notice within which to correct, or begin to correct, the asserted default, the lease provided that service of such notice "shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee."

(c) "Title to minerals vested in grantee under this grant shall not end or revert to grantor until there is a complete, absolute and intentional abandonment by grantee of each and all of the purposes, expressed or implied, of this grant and every part and parcel of the demised premises * * *."

The declaration of termination of the lease was based on the trial court's finding, amply supported by the evidence, that there had been no production of oil or gas on the leased premises from August, 1963, to January, 1964, and that during such period of time there had been no drilling or other operations conducted on the land.

■ The motion for continuance does not assert that any of the appellants could or would testify to facts showing that oil or gas was being produced on the land during the periods mentioned in the preceding paragraph. While it was alleged that Frank Lynch would testify "with respect to the remedial work performed" on the leased premises, neither the motion, the affidavit, nor the testimony of appellants' counsel gives any inkling as to the nature of such "remedial work." Nowhere do we find even a suggestion that the remedial work consisted of the "drilling operations" which, under the terms of the lease, might be required to keep the lease in force following the cessation of production of oil or gas. Nor is there any allegation to the effect that Frank Lynch would testify that such remedial work was undertaken within ninety days after the cessation of production and "continuously prosecuted." Under these circumstances, there is no showing that the testimony which Frank Lynch might give would defeat plaintiffs' claim, and the motion was deficient in that it failed to show the materiality of such testimony. Rule 252, Texas Rules of Civil Procedure.

■ Nor is expected testimony relating to lack of notice to appellants of any claimed breach by them of their obligations under the lease material to any issue in this case. By its very language, the lease provision relating to notice is applicable only where lessor is claiming that "lessee has not complied with all its obligations" under the lease. It is now well settled in Texas that an oil and gas lease, such as the one before us, creates a determinable fee in the lessee, and that the provision to the effect that, after the expiration of the primary term of five years, the lease shall continue in force as long as oil or gas is produced constitutes a special limitation upon the estate transferred. Stephens County v. Mid-Kansas Oil & Gas Co., 113

Tex. 160, 254 S.W. 290, 29 A.L.R. 566 (1923). Nowhere in the lease does the lessee undertake any obligation to drill, to continue production after oil or gas is discovered in paying quantities, or to commence new drilling operations after existing wells have ceased producing.[1] When the condition constituting the special limitation occurred, the lease terminated by force of such limitation, and not as the result of any default in their obligations by lessees or of any breach by lessees of any contractual duties imposed upon them by the terms of the lease. The existence of the condition terminating the lease was not a breach of duty by lessees and created no cause of action in lessor. Walker, The Nature of the Property Interests Created by an Oil and Gas Lease in Texas, 7 Tex. L.Rev. 1, 18 (1928); 2 Summers, Oil and Gas, § 337, p. 394 (1959).

Since the special limitation imposes no obligation on lessees to perform any duty, the clause providing for notice has no application here. Cf. Stephenson v. Calliham, 289 S.W. 158 (Tex.Civ.App.—San Antonio 1926, no writ). After the production of oil or gas had ceased, the lease could be continued in effect by the commencement, within ninety days, and continuous prosecution of drilling operations. If such drilling operations were not commenced within the specified time, the lease automatically terminated, and there was nothing lessees could do "to correct, or begin to correct, the asserted default."

Nor would Fitzsimmons' testimony concerning the agreement of March 28, 1963, present any defense to a suit seeking to declare the lease terminated. Giving to this agreement the interpretation most favorable to appellants, it amounted to no more than an acknowledgment by lessor that, as of that date, the lease was in force and effect, and an agreement by the lessor to confirm the continued existence of the lease for a four-months period ending July 31, 1963.

■ Since the trial court declared the lease terminated because of non-production, beginning August 1, 1963, and the failure of appellants to initiate new drilling operations within ninety days thereafter, it is clear that the testimony of Fitzsimmons with respect to the "extension" agreement of March, 1963, presented no defense to plaintiffs' suit. There is nothing in the record to indicate that Fitzsimmons could or would testify that there were subsequent extensions.

The clause reciting that, in the absence of a "complete, absolute and intentional abandonment" by lessee of each and all purposes of the lease there would be no forfeiture of the mineral estate, presents some difficulty. Although the instrument considered by this Court in Guerra v. Chancellor, Tex.Civ.App., 103 S.W.2d 775 (1937, writ ref'd), contained a similar provision, the conclusion that the lease had terminated by force of the special limitation was reached without commenting on the effect of such language.

■ It is apparent that, if literally interpreted, the clause proscribing a divestiture of the lessee's title to the minerals unless the circumstances support the conclusion that there has been an abandonment of the purposes of the lease modifies, if, indeed, it does not conflict with, the special limitation. Under the special limitation language, the estate of the lessee terminates, regardlesss of his intention, "when

---

1. Notice has been taken of the inconsistent positions assumed by our courts in holding that while there is no duty on the lessee to develop the leased land at all, the lessee is under an obligation to develop with reasonable diligence. If the lessee does no development work, or if he ceases all development work, he has not defaulted in any of his obligations; but if he commences and continues to do some development, but does not do this with reasonable diligence, he is guilty of breaching his implied obligation to develop with reasonable diligence and must respond in damages. Walker, The Nature of the Property Interests Created by an Oil and Gas Lease in Texas, 7 Tex.L.Rev. 485, 501, 502 (1930).

there is a complete cessation of actual use of the land for the purposes of the lease." W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27, 32 (1929). Theoretically, at least, neither unavoidable delays or accidents, acts of God, unfavorable economic conditions, nor financial difficulties of the lessee will save the lessee's interest where there is a cessation of production. However, the rule that the interest of the lessee is coterminous in duration with production has been softened by the Texas courts so that interruption due to temporary mechanical difficulties does not terminate the lease if the lessee is endeavoring diligently to restore production. Scarborough v. New Domain Oil & Gas Co., 276 S.W. 331 (Tex.Civ.App.—El Paso 1925, writ dism'd w. o. j.). But where, as here, the lease includes a drilling or reworking clause, providing that the lease will not terminate upon cessation of production if reworking operations are commenced within a specified time, the parties have defined what is meant by cessation of production and will be bound by their definition. The effect of the combination of the "thereafter" and "drilling and reworking" clauses is to preclude the classification as "temporary" of any cessation of production where reworking operations are not commenced within the specified time. Wainwright v. Wainwright, 359 S.W.2d 628 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n. r. e.); Woodson Oil Company v. Pruett, 281 S.W.2d 159 (Tex.Civ.App.—San Antonio 1955, writ ref'd n. r. e.); Haby v. Stanolind Oil & Gas Co., 228 F.2d 298 (5th Cir., 1955). With some possible exceptions, which are not applicable here, cessation of production, absent reworking operations, terminates the lease, irrespective of the intent of the lessee.

■■ Since a determinable fee, such as that created by the usual form of oil and gas lease in Texas, is a corporeal interest in land, competent writers have raised an eyebrow at the notion that the mineral estate created by a lease can be lost by abandonment. Walker, The Nature of the Property Interests Created by an Oil and Gas Lease in Texas, 7 Tex.L.Rev. 539, 589–586 (1929). Nevertheless, it cannot be doubted that in Texas a lessee may lose his estate by abandonment. In the Waggoner case, supra, our Supreme Court, after pointing out that, since the lessee acquired only a determinable fee, and that there can be no cessation of production without a termination of the lease, observed: "It is easy to confuse this principle with that of abandonment, which implies an intention to give up the interest granted. * * * The soundness is sometimes questioned of the rule in Texas and elsewhere that interests declared to be fees in land may be lost by abandonment. Mr. Summers points out, however, that in all jurisdictions where the view prevails that an oil or gas lease creates a vested interest in the lessee, for the purposes of the lease, as soon as it is made, the courts 'have not hesitated to declare such lease terminated by abandonment on that account. * * * The general rule, therefore, seems to be that an oil and gas lease, regardless of what theory the court may take as to the nature of the interest created thereby is extinguishable by abandonment.' Ample foundation for the doctrine is to be found in the very nature and object of these mineral development conveyances and contracts." 19 S.W.2d at 32. Thus, the Supreme Court distinguished termination by limitation from termination by abandonment, on the ground that termination by abandonment requires an intention on the part of the lessee to divest his estate.

It would seem that there can be no abandonment absent a cessation of production and a failure to use the land for mineral exploration, development and production. If there is such a cessation, the lease terminates not because of abondonment but because of the occurrence of one of the events which limits the duration of the estate. Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601 (1923). In order for there to be an abandonment, there must be both cessation of use and intention

to abandon. If cessation of production alone, without any proof of an intent to abandon, will terminate the estate of the lessor, it is difficult to imagine any situation where the doctrine of abandonment can be properly applied where there has been a cessation, other than temporary, of production. Under appellants' theory, the special limitation portions of the lease—the "thereafter," "unless" and the "drilling or reworking" clauses—would have to be read as though the determinable fee could not be ended by its own limitation unless the lessee intended to divest himself of his rights.

■ Without attempting to indicate to which situations, if any, the abandonment clause might properly be applied, we simply hold that where an event occurs which, under the language of the lease, limits the duration of the estate, a clause which purports to protect the lessee against loss of his rights unless the circumstances show an intent to abandon is inapplicable.

The court did not err in overruling the motion for continuance.

Appellants, by special exceptions, challenged the sufficiency of that portion of plaintiffs' petition in which it was alleged that the 1952 lease "long prior to December 7, 1963, * * * had terminated, by its own terms and provisions, in that, for a long period of time prior to said date no production of either oil or gas had been had under the terms of the lease, or otherwise, and for many months prior to said date no drilling or reworking operations upon any wells on said property were being conducted." Appellants' exceptions asserted that the allegations relating to the termination of the 1952 lease were mere conclusions, unsupported by factual allegations, and were insufficient to inform appellants of the evidence which they would be required to meet, since "said allegations do not allege exactly when the plaintiffs claim that production of oil and gas ceased completely," nor when production of oil or gas "ceased in paying or commercial quantities." Appellants here contend that the trial court erred in overruling their exceptions.

Even if it be assumed that the petition was vulnerable to attack by special exception, the action of the trial court in not forcing plaintiffs to file more specific pleadings does not, under the facts and circumstances of this case, constitute error requiring a reversal of the judgment. Under Rule 434, T.R.C.P., error of law committed by the trial court furnishes no ground for reversal "unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; * * *."

At least since the decision in Golden v. Odiorne, 112 Tex. 544, 249 S.W. 822 (1923), our courts have held that where reversal is sought on the ground that a special exception was improperly overruled, the burden of showing that the error is prejudicial rests upon the complaining party. "If there is no objection to improper evidence, and no showing that defendant was surprised or prevented from presenting his evidence or otherwise injured by the improper ruling, * * * the error must be deemed harmless." 249 S.W. at 825. The Golden decision was based on Rule 62a for the Courts of Civil Appeals,[2] from which our present Rule 434 was taken with no significant change in language.

■ In this case appellants candidly admit that they cannot honestly contend that they were in any way misled by the lack of specification in plaintiffs' pleadings. They do not claim that they were surprised by any evidence produced by plaintiffs at the trial, nor is there any indication in appellants' brief that they were prevented from

2. 149 S.W. x (1912).

**810**

presenting their evidence or otherwise injured by the ruling.

The trial court concluded that the lease had terminated because there was no production of oil or gas from the leased premises from August, 1963, through December, 1963. This finding is based on the testimony of appellants' gauger and on official records of the Railroad Commission disclosing that there had been no production from the leased premises since March, 1963. Appellants' employee also testified to the absence of drilling or reworking operations. The March, 1963, letter of agreement prepared on behalf of appellants by appellant Fitzsimmons makes it apparent that appellants were, at that time, concerned about the cessation of production, and this instrument expressed their intention "to either dispose of the lessees' interest in this lease, or to complete our remedial work and restore the lease to full production within the next four months' period."

■ The record thus discloses that appellants had full information concerning the termination of production and were aware that the critical period, so far as production or prosecution of reworking operations was concerned, was the period beginning in August, 1963. While facts known to the party seeking more informative pleadings cannot be considered for the purpose of determining whether his adversary's pleadings are sufficient as against a special exception, his knowledge, as reflected by the testimony adduced at the trial, must be considered in determining whether he has met the burden of establishing that the erroneous overruling of his special exception was reasonably calculated to, and probably did, cause the rendition of an improper judgment. Appellate Procedure in Texas, Sec. 17.10(1), pp. 19–31 (1965). The action of the trial court in overruling the special exceptions, if error, was harmless, and cannot form the basis for a reversal of the judgment. Texas Sanitation Co. v. Marek, 381 S.W.2d 710

(Tex.Civ.App.—Corpus Christi 1964, no writ).

The judgment of the trial court is affirmed.