**WAGGONER & ZELLER OIL COMPANY et al., Appellants,**

v.

**Truman DEIKE, Individually and as Independent Executrix of the Estate of Fritz F. Deike, Deceased, Appellee.**

**No. 12120.**

Court of Civil Appeals of Texas, Austin.

April 3, 1974.

Rehearing Denied April 24, 1974.

———◆———

Everett J. Grindstaff, Grindstaff & Grindstaff, Ballinger, for appellants.

Greg V. Gossett, Logan, Lear, Massey, Gossett & Harrison, San Angelo, for appellee.

SHANNON, Justice.

This appeal concerns a suit filed in the district court of Runnels County by Fritz F. Deike and wife, Truman Deike, for a declaratory judgment that an oil and gas lease had terminated because of the cessation, after expiration of the primary term, of production of oil and gas. Appellants are members of a partnership, Waggoner & Zeller Oil Company, and are W. M. Waggoner, A. E. Zeller, Anthony M. Cioffi, L. B. Howerton, Samuel Weill, Jr., John P. Strutzel, Richard G. Rawlins, and Maryann Rawlins. Upon trial to a jury, judgment was entered for appellee. Truman Deike,[1] canceling the lease, awarding appellants $2,560.00 in damages for the recoverable casing in the well, and requiring appellants to remove the equipment and personal property within ninety days. We will affirm that judgment.

The lease canceled by the judgment was comprised of sixty acres of land in Runnels County and was executed by the Deikes, as lessors, in January of 1966, to Dorman N. Farmer, lessee, whose interest, by subsequent conveyances, became vested in appellants. The lease was " . . . for a term of three (3) years from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land hereunder." Paragraph five of the lease provided in part that " . . . if after discovery and production of oil, gas or other mineral the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter . . ." Paragraph eight is concerned with notice to the lessee of breaches of the lease and provides in part that, "The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty (60) days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument."

A well was completed in March of 1967 and commercial production was obtained

1. Fritz F. Deike died after the lawsuit was filed and before trial.

through the end of the primary term. However, during the years after the well was drilled production decreased. From July through November of 1970 there was no production, but there was production in December of 1970, which continued through February of 1971. The amount of production from March of 1971 through September 14, 1971, was disputed. The appellee contended that there was no production in paying quantities and the appellants claimed otherwise. On July 3, 1971, Fritz F. Deike advised an agent for appellants that he considered the lease to have terminated and that he did not want any of appellants' agents "to set foot" on the lease. On two different occasions Deike attempted to notify appellants in writing that he considered the lease terminated. On July 8, 1971, appellants received a letter from Deike's attorney to that effect.

In her trial pleading appellee took the position that production had ceased under the lease as of March, 1971, and that because no drilling or reworking operations had been commenced within sixty days thereafter, the lease had, by its terms, terminated.

In response to appellee's suit, appellants pleaded that since the end of the primary term of the lease and until about July 1, 1971, they had continuously produced oil and gas in paying quantities from the Deike well or else had in good faith conducted reworking operations on the well. Appellants averred also that on or about July 1, 1971, Fritz Deike instructed appellants' agent "to not set foot" on the lease. Appellants pleaded further that by the terms of paragraph eight of the lease they had sixty days after receipt of written notice from the Deikes of the breach by them of any obligation in the lease to commence compliance with those obligations. In this regard appellants pleaded that they received written notice on July 8, 1971, and that on or about September 1, 1971, Fritz Deike refused their agents entry upon the lease.

The case was submitted to the jury upon six special issues. In answer to those issues the jury found that between March 1, 1971, and September 14, 1971, there was no oil production from the well, and that during the same period of time there had been no reworking operations conducted by appellants. The jury answered further that there was a period of at least sixty consecutive days after March 1, 1971, that the oil was not produced in paying quantities. The jury also responded that Fritz Deike, on July 3, 1971, told appellants' agent that he considered the oil and gas lease terminated.

■ Appellants maintain in their first point of error that, because paragraph eight of the lease required written notice from the lessor of any breach of the lease agreement by the lessee, it was necessary for the lessor to give the lessee written notice of cessation of production and from that time the lessee would have sixty days to begin production, drilling or reworking operations. Appellants say that they were not accorded that time after notice was received.

The same basic contention was made by the operators and rejected by the courts in *Lynch v. Southern Coast Drilling Company*, 442 S.W.2d 804 (Tex.Civ.App.1969, no writ) and *Preston v. Lambert*, 489 S.W.2d 955 (Tex.Civ.App.1973, writ ref'd n. r. e). We are of the opinion that those cases control the disposition of this point of error.

In *Lynch*, which involved the same kind of lease provision, the court stated, "By its very language, the lease provision relating to notice is applicable only where lessor is claiming that 'lessee has not complied with all its obligations' under the lease. It is now well settled in Texas that an oil and gas lease, such as the one before us, creates a determinable fee in the lessee, and that the provision to the effect that, after the expiration of the primary term of five years, the lease shall continue in force as long as oil or gas is produced constitutes a

special limitation upon the estate transferred . . .

"When the condition constituting the special limitation occurred, the lease terminated by force of such limitation, and not as the result of any default in their obligations by lessees or of any breach by lessees of any contractual duties imposed upon them by the terms of the lease. The existence of the condition terminating the lease was not a breach of duty by lessees and created no cause of action in lessor. Walker, The Nature of the Property Interests Created by an Oil and Gas Lease in Texas, 7 Tex.L.Rev. 1, 18 (1928); 2 Summers, Oil and Gas § 337, p. 394 (1959).

"Since the special limitation imposes no obligation on lessees to perform any duty, the clause providing for notice has no application here. Cf. Stephenson v. Calliham, 289 S.W. 158 (Tex.Civ.App.—San Antonio 1926, no writ). After the production of oil or gas had ceased, the lease could be continued in effect by the commencement, within ninety days, and continuous prosecution of drilling operations. If such drilling operations were not commenced within the specified time, the lease automatically terminated, and there was nothing lessees could do 'to correct, or begin to correct, the asserted default.' "

■ Appellants complain by two points of error that the trial court erred in not holding, as a matter of law, that the well was producing oil and gas in paying quantities and that there had been only a temporary cessation of production. These points will be overruled inasmuch as we are of the opinion that the jury's answer of no production from the well from March 1 to September 14, 1971 was supported by credible evidence. When the well was first drilled, it was free-flowing. By August of 1968, however, an electric pump was necessary to gain production, and appellant Zeller testified that the electric pump motor was stolen sometime after the middle of March, 1971. Thereafter, the well operator "shut-in" the well.

Moreover, the evidence was that the motor used to pump the well was electric and that the records showed that no electricity was used at the well site from March, 1971, through September, 1971. Further, it was shown that the purchaser of the oil runs from the well in issue purchased no oil or gas during the months of March, April, May, June, July, or August of 1971. Finally, the records of the Railroad Commission showed that there had been no production from the Deike well from May through August of 1971.

■ Appellants' point of error five claims error by the court in not submitting certain special issues and a definition requested by appellants. Point six complains of error in the court's submission of the issues and definitions concerning reworking operations. With respect to point of error number six, an examination of the record reveals that there were no objections to the court's charge, and by not objecting appellants waived any error in the submission. An instrument embodying appellants' requested special issues and definition appears in the supplemental transcript. That instrument is not signed by the judge, nor is there any showing that the request was presented to the judge or that a ruling thereon was made. Under these circumstances, we cannot consider the point. Texas Rules of Civil Procedure, rule 276; American Pozzolan Corporation v. Desert Trucking Co., 450 S.W.2d 433 (Tex.Civ. App.1970, writ ref'd n. r. e.). Neuhoff Brothers Packers, Inc. v. McCauley, 399 S.W.2d 929 (Tex.Civ.App.1966, writ ref'd n. r. e.).

■ Appellants contend finally that the court erred in requiring that appellants remove all equipment and personal property within ninety days after the date of entry of the judgment. Appellants also contend that the court erred in not requiring that appellee execute an indemnity bond to insure that the well was properly plugged. As neither contention is supported by argument or authority, those contentions will be

considered waived. State Bar of Texas, Appellate Procedure in Texas, § 12.4[6] (1964); Patino v. Texas Employers Insurance Association, 491 S.W.2d 754 (Tex. Civ.App.1973, writ ref'd n. r. e.).

The judgment is affirmed.