No. 82-408

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

———————————

MIAMI OIL PRODUCERS, INC., a
corporation; S.& J. OPERATING COMPANY, et al.,

                    Defendants and Appellants,

        vs.

GERALD J. LARSON and HAZEL LARSON,
his wife, et al.,

                    Plaintiffs and Respondents.

———————————

Appeal from:  District Court of the Seventh Judicial District,
              In and for the County of Richland
              Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

    For Appellants:

        Frisbee, Moore & Stufft, Cut Bank, Montana

    For Respondents:

        Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
        Montana

———————————

                    Submitted on briefs: December 30, 1982

                              Decided:  March 24, 1983

Filed:  MAR 24 1983

_Ethel M. Harrison_
——————————————————————————————
                    Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The Seventh Judicial District Court entered summary judgment against Miami Oil Company, Inc., (Miami) and S & J Operating Company and default judgment against the other named defendants in an action to quiet title and obtain a release of an oil and gas lease. Miami appeals.

In October, 1965, Hazel and Gerald Larson executed and delivered to Sun Oil Company an oil and gas lease, consisting of 520 acres in Richland County, Montana. The lease provided for a primary term of five years.

On March 12, 1968, Sun Oil Company assigned to Miami some or all of its interests in several oil and gas leases, including interest in 320 acres subject to the 1965 lease from Larsons. That year Miami commenced drilling operations and in November, completed an oil well which produced in sufficient amount to allow payment of royalties to the lessors. Production from the lone well continued through October, 1978. Subsequent to that month no royalty payments were received by lessors.

In October, 1980, Larsons' attorney sent a letter to Miami, noting that drilling activities had been discontinued on Larsons' property for the two preceding years and requesting that Miami execute and return a release of its oil and gas lease or assignment. Miami did not respond. Larsons' attorney followed with a similar letter six weeks later.

In January, 1981, after receiving no response to their requests, the Larsons commenced this action against Miami. They claimed the lease was terminated under its own terms because no oil or gas had been produced since 1979 and no drilling or reworking operations had been resumed or

2

commenced for more than ninety consecutive days. Additionally, they claimed that Miami failed to release the leasehold or assignment interest which it held within sixty days of forfeit date as required by section 82-1-201, MCA.

Miami responded by filing a motion to dismiss for failure to join indispensable parties. Thereafter, with the court's permission, the Larsons filed an amended complaint which named as parties plaintiff and defendant, those individuals to whom the Larsons or Miami had previously conveyed or assigned interests in the mineral fee or leasehold. Additionally, Kerry Petroleum Company, Inc., was named as party plaintiff because the Larsons executed and delivered to Kerry Petroleum an oil and gas lease dated July 28, 1981, which covered the same property subject to the 1965 lease and Miami's assignment therefrom.

Except for S & J Operating Company, one of Miami's successors in interest, none of the newly named defendants answered. Therefore, the Larsons moved for summary judgment against Miami and S & J Operating Company, and default judgment against the remaining defendants and thereby requested an order: 1) quieting title in plaintiffs to the real estate and leasehold rights and interest involved; 2) terminating all leases and assignments in which the defendants were involved; 3) directing the defendants to promptly file releases of the leases and interests in which they are involved in Richland County; and 4) directing defendants to either immediately plug the well involved as required by the rules of the Montana Oil and Gas Conservation Commission or to pay money damages to the plaintiffs in the amount of the reasonable costs that plaintiffs will incur in plugging the well. Additionally, the Larsons asked for

3

statutory damages of $100.00 and reasonable attorney's fees and costs pursuant to section 82-1-202, MCA.

The District Court granted the relief requested by plaintiffs when it entered its summary and default judgment order, and specifically provided:

> "3. None of the defendants own any right, title, nor interest of any kind or character in either the surface fee, or mineral fee, or leasehold interest in any of said described land. None of the defendants own any right, title or interest of any kind or character in the properties and fixtures placed by any of them on said described land.
>
> " . . .
>
> "5. Plaintiff Kerry Petroleum Company is given 120 days after the date of this judgment to determine whether the well on said described land can be made producible. If so, when production ceases, it must plug the well at its own expense. If such well cannot be made producible, Kerry Petroleum Company must notify simultaneously this court and counsel for Miami Oil Producers, Inc. and S & J Operating Company, who, within 35 days after such notice is given, must plug the well drilled by them on said described land in accordance with the rules of the Montana Oil and Gas Conservation Commission. If, within 35 days after the giving of notice by Kerry Petroleum, the defendants Miami Oil Producers, Inc. and S & J Operating Company do not file with the Clerk of this Court notice that the well has been plugged, Kerry Petroleum is ordered to plug the well and the defendants, and each of them, are ordered to pay the damages sustained by Kerry Petroleum in plugging the well. The Court hereby reserves judgment on the amount of such damages until it is determined whether the well must be plugged at defendant's expense."

The Court frames the issues before it as follows:

(1) Whether the instant oil and gas lease required the Larsons to give Miami notice of lease termination?

(2) Whether the Larsons complied with demand for release requirements under section 82-1-203, MCA, prior to bringing this action?

(3) Whether the relief given by the trial court was improperly beyond the scope of the pleadings?

The habendum clause of the Larson lease states:

4

"2. Subject to the other provisions herein contained, this lease shall be for a term of five years from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land hereunder or land with which it or any part of it may be pooled, or operations are conducted or this lease is otherwise maintained as hereinafter provided."

It is followed by ten paragraphs, three of which are relevant to the issue of termination. Those paragraphs state, in pertinent part:

"6. . . . If such . . . cessation of production occurs within ninety (90) days prior to or at any time after the expiration of the primary term and this lease is not otherwise maintained, this lease shall nevertheless remain in force if production or operations for drilling or reworking are commenced or resumed on said land, or land pooled with such land, or any part thereof, within ninety (90) days after such . . . cessation of production. Upon the expiration of the primary term or at any time or times thereafter when this lease is not otherwise maintained, this lease shall remain in force so long as any operations for drilling or reworking are prosecuted on said land or land pooled with such land, or any part thereof, with no cessation of more than ninety (90) consecutive days, and, if they result in production of oil, gas or other mineral so long as oil, gas or other mineral is produced. 'Produced' or 'production' within the meaning of this paragraph and paragraph 2 hereof shall mean produced or production in any quantity so that royalties may be payable to Lessor as herein provided.

"7. . . . Lessee shall have the right at any time during the term of this lease or within one year after the termination of this lease to remove all properties and fixtures placed by lessee on said land, including the right to draw and remove all casing whether from producing or nonproducing wells . . .

" . . .

"10. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease or cause a termination or reversion of the estate hereby created, nor be grounds for cancellation hereof in whole or in part save as herein expressly provided. In the event that Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the fact relied upon as constituting a breach hereof, and Lessee if in default, shall have sixty (60) days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. Neither

5

notice nor attempted compliance shall be evidence that a breach has occurred. The service of said notice shall be precedent to the bringing of any action by Lessor on this lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on Lessee . . ."

Miami argues that since production commenced during the primary term of the lease, the lease cannot be terminated unless notice is given pursuant to paragraph 10 of the lease. Miami relies on Consolidated Gas Co. v. Rieckhoff (1944), 116 Mont. 1, 151 P.2d 588.

In Rieckhoff, the oil and gas lease at issue contained, inter alia, a habendum clause, which provided for a primary term of two years or as long thereafter as oil or gas is produced from said lands; a development clause, which required that drilling be commenced within two years unless the lessee pays for the privilege of deferring commencement for one year; and a termination clause, which provided for termination upon lessee's failure to commence drilling within the specified time or failure to remedy breach within thirty days after receipt of written notice from lessor specifying the nature of lessee's default under the lease terms.

The issue before the Court in Rieckhoff was whether the plaintiff's complaint constituted a cause of action under the contract. The Court concluded it did not and said:

" . . . the only contingency which would operate to ipso facto terminate the contract and obviate the necessity of notice would be the failure to commence the well within the term. Since there was no question but that the well was commenced in time, the only thing which can operate to terminate the contract would be a breach of the covenant to diligently perform. Before the question of diligence can be litigated, the plaintiff must, under the terms of the agreement, allege and prove that a notice of default was given and no sufficient effort to remedy the default was made." 116 Mont. at 6, 151 P.2d at 590.

We would be compelled to accept Miami's argument if the provisions of the Larson lease were comparable to the terms

6

of the Rieckhoff lease. However, they are not. The inclusion of paragraph 6, the cessation of production clause, clearly distinguishes the Larson lease from the lease considered in Rieckhoff.

Under the terms of the Larson lease, termination may result from one of three contingencies: (1) failure to commence drilling operations within the specified time, absent timely rental payments deferring commencement; (2) failure to resume or commence drilling or reworking operations or production within ninety days after production has ceased, if the primary term has expired; or (3) failure to remedy a breach of obligation within sixty days after the lessee has received written notice from the lessor specifying the facts relied upon as constituting the breach.

The habendum clause plainly provides for a lease term of five years "and as long thereafter as oil, gas or other mineral is produced from said land." The term "produced" is consistently defined throughout the lease as "production in any quantity so that royalties may be paid to the lessors as herein provided." Under paragraph 6, if production ceases after expiration of the primary term and drilling or reworking operations are not resumed or commenced within ninety (90) consecutive days after cessation of production, the lease no longer remains in force.

Here, it is undisputed that production from Miami's well ceased in October 1978. The record is devoid of any evidence or even assertion that drilling or reworking operations were resumed within ninety days of cessation. Therefore, the lease automatically terminated, ipso facto, when Miami failed to resume drilling or reworking operations within the period specified in paragraph 6.

7

Furthermore, it is not proper to engraft the notice clause upon the cessation of production clause, as Miami suggests, and thus conclude that since production commenced within the primary term, the lease is extended indefinitely absent notice of breach, demand for compliance and lapse of sixty days.

Paragraph 10 does not and should not effect the lease term. It applies only when operations are not being conducted in compliance with the terms of the lease. The lessee is not obligated to extend the term of the lease by resumption of its operations once production has ceased.

In discussing the relationship between similar notice and cessation of production clauses in Lynch v. Southern Coast Drilling Company (Tex. Civ. App. 1969), 442 S.W.2d 804, the Texas Court of Civil Appeals aptly explained:

> "Nor is expected testimony relating to lack of notice to appellants of any claimed breach by them of their obligations under the lease material to any issue in this case. By its very language, the lease provision relating to notice is applicable only where lessor is claiming that 'lessee has not complied with all its obligations under the lease.' It is now well settled in Texas than an oil and gas lease, such as the one before us, creates a determinable fee in the lessee, and that the provision to the effect that, after the expiration of the primary term of five years, the lease shall continue in force as long as oil or gas is produced constitutes a special limitation upon the estate transferred. (Citation omitted.) Nowhere in the lease does the lessee undertake any obligation to drill, to continue production after oil or gas is discovered in paying quantities, or to commence new drilling operations after existing wells have ceased producing. (Footnote omitted.) When the condition constituting the special limitation occurred, the lease terminated by force of such limitation, and not as a result of any default in their obligations by lessees or of any breach by lessees of any contractual duties imposed upon them by the terms of the lease . . .
>
> "Since the special limitation imposes no obligation on lessees to perform any duty, the clause providing for notice has no application here. (Citation omitted.) After the production of oil or gas had ceased, the lease could be continued in effect by the commencement, within ninety days, and

8

continuous prosecution of drilling operations. <u>If such drilling operations were not commenced within the specified time, the lease automatically terminated, and there was nothing lessees could do 'to correct, or begin to correct, the asserted default.'"</u> 442 S.W.2d at 806-07.

We hereby adopt the reasoning and rule of the <u>Lynch</u> case. The District Court committed no error by enforcing, via the quiet title action, the plain terms of the lease between the parties.

Miami next contends that the Larsons are not entitled to relief because they failed to comply with the demand requirements of section 82-1-203, MCA, prior to bringing this action. Miami's position is that, prior to commencement of an action for release of an oil and gas lease, each and every owner of any partial interest in the leased land must serve notice of demand for release upon each and every holder of any type of interest in the leasehold. Since the Larsons only made a demand for release upon Miami, and not any of the other named defendants, and since none of the other named plaintiffs, excluding Kerry Petroleum, served notice of demand for release upon Miami or the other named defendants, the requirements of section 82-1-203, MCA, were not fulfilled.

We reject Miami's argument.

The purpose of section 82-1-203, MCA, is to give a lessee an opportunity to satisfy his statutory duty before he is compelled to do so by the court and is subjected to damages, attorney's fees and court costs.

Section 82-1-201, MCA, clearly provides that it is the duty of the lessee, his successors or assigns to record a release of an oil and gas lease within sixty days of its forfeiture or termination. If the lessee either neglects or refuses to execute the release, then section 82-1-202, MCA,

9

gives the lessor legal recourse. By bringing an action to obtain the release, the lessor may also recover statutory damages of $100.00, court costs, attorney's fees and any additional damages that the evidence in the case warrants.

The record clearly indicates that the Larsons made timely demands for release upon Miami. It also shows that Miami has been extremely recalcitrant in discharging its statutory duties.

Miami twice refused to execute a release when timely demands were made by the Larsons prior to commencement of this suit. After the suit was commenced, Miami again refused to fulfill its statutory responsibilities. In July 1981 Kerry Petroleum requested a release from Miami and the names and addresses of the other named defendants so that Kerry Petroleum could submit Miami's executed release to them. Not only did Miami refuse to execute the release, it refused to supply the names and addresses of its successors in interest.

We will not reward Miami for its obstinance by construing section 82-1-203, MCA, to require a demand for release from each owner of a partial interest in the mineral fee before an action for release by any owner can be maintained. The purpose of section 82-1-203, MCA, is served whether one or all the owners in interest in a mineral fee demand(s) release of a lease after its date of forfeiture or termination. If the notified lessee chooses to disregard his opportunity to avoid litigation by executing a release within twenty days after demand has been made, so be it. This Court will not afford him further opportunity to extend his cloud over the lessor's title by denying relief pending written demands from the remaining owners in interest in the mineral fee. Miami received that to which it was entitled under statue.

10

Further, it will not be heard that a lessor's claim for relief against a particular lessee will be defeated by failure to make contemporaneous demands upon each and every one of the lessee's successors in interest. To the extent they may be prejudiced by lack of notice, it is for them to raise the issue, not the lessee who has received that to which he is entitled under section 82-1-203, MCA.

Miami's final argument is that the relief granted by the District Court was improper and beyond the scope of the pleadings.

This issue is raised for the first time on appeal. The relief granted was specifically proposed by the Larsons in their reply brief in support of their motion for summary judgment. Rather than present its objections to the trial court, Miami declined to exercise its opportunity to respond and informed the District Court, via a letter to the Clerk of Court, that the court should proceed to adjudicate the matter as "[t]here [was] nothing in the way of new matter in the Plaintiff's Reply Brief."

The rule is well settled that this Court will not consider issues on appeal which were not raised below. State v. Johns (1982), _____ Mont. _____, _____ P.2d _____, 39 St.Rep. 2049.

As a final matter, the Larsons assert that this appeal was frivolous and that the court therefore should award them costs and attorney's fees.

Where there is a reasonable ground for appeal, a respondent is not entitled to recover damages under Rule 32, M.R.App.Civ.P., Bailey v. Ravalli County (1982), _____ Mont. _____, 653 P.2d 139, 39 St.Rep. 2010. Here, construction of the lease and section 82-1-203, MCA, was reasonably at issue.

11

The respondent's request for attorney's fees on appeal must be denied.

Affirmed.

_____
Justice

We concur:

_____
Chief Jusitce

_____

_____

_____
Justices

12