VINCENT J. KIRBY, APPELLANT, V.
ALVIN HOLLAND ET AL., APPELLEES.

316 N.W.2d 746

Filed March 5, 1982. No. 43696.

Vincent J. Kirby, pro se.

Robert M. Harris and Randall L. Lippstreu for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

Vincent J. Kirby brought this action in the District Court for Banner County, Nebraska, to quiet title to an oil and gas lease executed in 1969 as against the interests of the defendant Alvin Holland who asserts title to the same mineral interests by virtue of an oil and gas lease subsequently executed. The leases pertain to the following described property: Section 34, Township 18 North, Range 54, and the northeast quarter of Section 3, Township 17 North, Range 54, all West of the 6th P.M., in Banner County, Nebraska. Kirby also prayed for an accounting of oil production from the leased premises by Holland, as well as injunctive relief placing Kirby in possession under the lease and barring Holland from continued operation of the oil well on the premises.

Holland answered, alleging Kirby's lease terminated by reason of cessation of oil production, and that Kirby had abandoned the lease. Holland further alleged that he was in possession of the premises and was operating the producing well by virtue of an oil and gas lease executed in 1973, and that Kirby's claim, if any, was barred by laches.

The court found the lease under which Kirby asserted

title "had terminated because of non-production," denied all claims to relief, and ordered the plaintiff's petition dismissed. Kirby then appealed to this court.

Before the theories under which Kirby's claim rests can be discussed, it is necessary to outline the relevant facts. On July 7, 1969, the landowners, Petersons, executed and delivered to Holland an oil and gas lease. The habendum clause provided a primary term of 6 months, "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." Neither this lease nor the subsequent ones to which we will later refer contained the usual alternate provisions for continuing the lease by commencing drilling or paying of delay rentals.

An oil well, denominated the Peterson 1-A, had been drilled on the land in 1959, but was not producing oil or gas when the 1969 lease was executed and delivered. It was apparently Holland's intention to reopen and rework the well and make it productive. In February of 1971 the Petersons extended the term of the lease to July 7, 1971. On March 24, 1971, Holland assigned the oil and gas lease to F. J. Kirby, the brother of the plaintiff Kirby. The assignment contained the following provisions: "Assignor reserves an undivided 1/16th of 8/8ths of all oil and gas produced from the premises as an overriding royalty interest. This assignment is contingent upon the drilling or reworking a former well located on the premises within a 30 day period, from the date of this assignment, unless a further extension of time is granted assignee. Assignor further reserves the right to have access to the leasehold premises at any time." The assignment warranted that Holland was "the lawful owner of and has good title to the interest above assigned in and to said lease." On April 24, 1971, F. J. Kirby assigned the lease to the plaintiff Kirby. The consideration for this assignment was a payment of $2,000 by Kirby to the company reworking the well for F. J. Kirby. Later the plaintiff Kirby made various other advances and purchased equipment necessary to

place the well in production. The equipment included a pump jack and motor (both of which were placed upon the well), in addition to a treater. Production of oil began and records indicate that the well produced as follows: June 1971, 739 barrels; July 1971, 598 barrels; August 1971, 331 barrels; and September 1971, 371 barrels. There is other evidence indicating the well may have produced until early November 1971, but that production, if it occurred, remained unsold in storage tanks on the premises. On November 3, 1971, Liberty Pipe & Supply Company, an unsecured creditor which had sold the pump jack, motor, and treater to Kirby, removed those items from the premises when Kirby failed to fully pay the balance of the debt. Various other alleged unpaid suppliers filed mechanics' liens against the leasehold estate, and in October 1973 one of the alleged suppliers began a foreclosure action, naming the other alleged lienholders, as well as the plaintiff Kirby and the defendant Holland, as defendants.

On November 19, 1971, Holland took a new oil and gas lease from the Petersons covering the same land. This lease was for a primary term of 1 year "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." There was no oil or gas production under this lease, although Holland treated the Peterson 1-A with chemicals from time to time and drilled another well, apparently a nonproducer, in the northwest quarter of Section 34.

In May of 1973 Petersons executed and delivered to Holland a third oil and gas lease for a primary term of 1 year (effective November 19, 1973) "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

In June of 1974, during the primary term of the lease, Holland began the production of oil and gas from the Peterson 1-A. On March 6, 1978, Kirby began this action. It is undisputed there was no oil or gas production from the leased premises during the period

November 1971 until Holland began production in June of 1974. The evidence indicates the price of oil per barrel in 1971 was $2.50 to $3.50 and at that price profitable oil production was not possible. Later the price of oil rose to about $40 per barrel, and the well could then produce oil in paying quantities.

In 1 Brown, The Law of Oil and Gas Leases § 5.09 at 5-56, 57 (2d ed. 1973), it says: "Where the primary term of an oil and gas lease has expired and the lease is being continued in force by production, it is elementary that the lease will come to an end when the property ceases to 'produce,' as that term is defined in the various jurisdictions." In most jurisdictions a temporary cessation of production does not terminate the lease. *Id.;* 2 Summers, Law of Oil and Gas § 305 (1959). This court has not had occasion to define the term "production" as it is used in the habendum clause, but in the case of *Long v. Magnolia Petroleum Co.,* 166 Neb. 410, 89 N.W.2d 245 (1958), by way of dicta we stated that after the primary term has expired, "production" means production in paying quantities. The court in that case did have occasion to discuss the question of whether any action by the lessor (in this case the Petersons) was required to terminate a lease when the conditions of the lease were not met. At issue in that case were the provisions for the continuance of the lease during the primary term by commencement of drilling or the payment of delay rentals. The court said: "[I]t is also true that forfeit and terminate are not synonymous. See, Schneider v. Springmann, 25 F.2d 255; Kugel v. Young, 132 Colo. 529, 291 P.2d 695; Woodson Oil Co. v. Pruett (Tex. Civ. App.), 281 S.W.2d 159; Gillespie v. Bobo, 271 F. 641; Baldwin v. Kubetz, 148 Cal. App. 2d 937, 307 P.2d 1005. As stated in Kugel v. Young, *supra:* 'While appellate courts, through the use of inaccurate terminology, have frequently referred to the termination of an unless lease as a "forfeiture," there actually is no element of forfeiture involved. The lessor is not required to do anything, but the lessee's failure to meet

the conditions of the contract automatically terminates it. The interest created in the lessee by such a lease does not become forfeited upon failure to comply with its conditions; it simply expires.' When a lease terminates by its own terms the equitable rule as to relieving against forfeitures is not applicable thereto." 166 Neb. at 424, 89 N.W.2d at 254.

In the case before us, the cessation of production was not temporary. It continued for a period of 31 months. The trial court's finding that the 1969 lease had terminated because of cessation of production was supported by the evidence. Pertinent precedents supporting this holding are *Gillespie v. Wagoner*, 28 Ill. 2d 217, 190 N.E.2d 765 (1963); *H & R Oils, Inc. v. Pioneer Am. Ins. Co.*, 541 S.W.2d 665 (Tex. Civ. App. 1976); and *Townsend v. Creekmore-Rooney Company*, 332 P.2d 35 (Okla. 1958).

Kirby's first theory is that the 1973 lease inures to his benefit under the doctrine of after-acquired title by reason of warranties of title made by Holland in his assignment to Kirby's predecessor in title, F. J. Kirby.

Whatever the theory of ownership granted by an oil and gas lease is, it is plain that it conveys an interest in real estate. 1 Brown, *supra*, §§ 3.02 et seq.; *Baumgartner v. Gulf Oil Corp.*, 184 Neb. 384, 168 N.W.2d 510 (1969).

The doctrine of after-acquired title is one under which title to land acquired by a grantor who previously attempted to convey title to the same land which he did not then own inures automatically to the benefit of his prior grantee. Black's Law Dictionary 57 (5th ed. 1979). The doctrine has been incorporated into Nebraska law by statute. Neb. Rev. Stat. § 76-209 (Reissue 1976) provides: "When a deed purports to convey a greater interest than the grantor was at the time possessed of, any after-acquired interest of such grantor to the extent of that which the deed purports to convey shall accrue to the benefit of the grantee; *Provided, however,* such after-acquired interest shall not inure to the benefit of

the original grantee or his heirs or assigns, if the deed conveying said real estate was either a quitclaim or special warranty . . . ."

The key words in the statute are "to the extent of that which the deed purports to convey." The grantee gets what he was originally supposed to have been granted, but not any larger estate than was granted.

In 31 C.J.S. *Estoppel* § 30 at 319 (1964) it is said: "The estoppel to assert an after-acquired title is restricted to the estate or interest intended to be conveyed, and unless the after-acquired title is the title, or part of the title, purportedly conveyed to the grantee it will not inure to his benefit. The estoppel will not operate as to land or an interest therein other than that which is specifically conveyed or called for by the plain import of the conveyance, and to which the covenants for title are confined." Elsewhere in the same section, the writer says at 323: "The doctrine of estoppel to assert an after-aquired title has been held applicable with respect to oil, gas, and mineral leases so as to preclude the lessor from asserting a subsequently acquired title or interest as against the lessee, at least where such leases carry the usual express or implied covenants of warranty, *but the estoppel is restricted to the mineral interest which the lease purports to demise.*" (Emphasis supplied.)

The principles cited in the above texts are supported by the following case authority. *McKinnon v. Lane,* 285 S.W.2d 269 (Tex. Civ. App. 1955); *S. W. Bardill, Inc. v. Bird,* 346 S.W.2d 25 (Ky. 1961); *Cornish v. Yarbrough,* 558 S.W.2d 28 (Tex. Civ. App. 1977). *Ford v. Axelson,* 74 Neb. 92, 103 N.W. 1039 (1905), upon which Kirby relies, is not on point.

In this case Holland warranted to F. J. Kirby the leasehold estate for a term of 6 months and as long thereafter as oil or gas is produced from the premises by the lessee. Holland did not purport to convey or warrant anything beyond the duration of the 1969 lease. That lease terminated when production ceased for an unreasonable length of time. The doctrine of after-

acquired title is not applicable.

Kirby asserts that Holland is estopped to assert title as against Kirby. For purposes of discussion of this theory we assume, without determining, that title to real estate can be somehow acquired by estoppel independently of the doctrine of after-acquired title.

The bases of Kirby's claim of estoppel are (1) a letter written by Kirby's attorney to Holland, and (2) the circumstances surrounding the dismissal of the mechanic's lien foreclosure action. The letter from the attorney to Holland was written about 7 months after Kirby's production from the Peterson 1-A ceased. The letter recites that Kirby assumed that Holland, by taking the 1971 lease, was protecting his own interest and the interest of Vincent J. Kirby. Holland showed the letter to his attorney. There was no acknowledgment of Kirby's self-serving proclamation. On April 22, 1974, about 2½ years after the Kirby production ceased, the mechanic's lien foreclosure action was dismissed by the plaintiff in that action. This apparently was agreed to by all parties, including Kirby, who paid nothing to get the action dismissed. The lienholders merely abandoned their claims and dismissed the action.

The elements of estoppel have been defined by this court in *County of Scotts Bluff v. Hughes*, 202 Neb. 551, 560, 276 N.W.2d 206, 211-12 (1979), where we said: "In the case of Pester v. American Family Mut. Ins. Co., 186 Neb. 793, 186 N.W.2d 711, in an effort to further refine the position of this court with respect to equitable estoppel, we stated: 'The essential elements of equitable estoppel are: As to party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts; as

to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.'"

There is nothing in the record to show that Holland made any representation or concealed any facts upon which Kirby relied to his detriment, or that Kirby changed position or failed to act to his prejudice because of any reliance upon anything Holland did or failed to do. Indeed, the 1973 lease was entered into after the two transactions upon which Kirby relies had taken place. The elements of estoppel are not in any respect shown by the evidence.

The judgment is affirmed.

AFFIRMED.