(No. 37593.—

HUGH T. GILLESPIE, Appellee, *vs.* FORD WAGONER *et al.,* Appellants.

*Opinion filed May 27, 1963.*

McGAUGHEY, McGAUGHEY & HENRY of Mt. Carmel, (WALKER J. HENRY, of counsel,) for appellants.

GOSNELL & BENECKI, of Lawrenceville, (MAURICE E. GOSNELL, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Plaintiff, Hugh T. Gillespie, the owner of 80 acres of land in Lawrence County, filed an action to cancel an oil and gas lease upon his land on the ground that it terminated through abandonment. The defendants counterclaimed alleging slander of title and upon stipulation of the parties the cause was heard on the complaint. Defendants appeal from a decree finding that the lease had been abandoned and forfeited and giving them 10 days to release the lease and 60 days within which to remove their equipment.

Plaintiff executed an oil and gas lease to Allen Brothers on June 19, 1953, and by mesne assignments the working interest became vested in a number of persons subject to a $\frac{1}{32}$ overriding royalty interest in Ford Wagoner, one of the defendants. In 1954 the defendant working-interest

owners caused an oil and gas well to be drilled, equipped, put on pump and placed in production. Burns Brothers, who retained a small working interest, were the operators. Oil and gas was produced until September, 1957. There is some dispute as to the time when the well was completely shut down. The last oil marketed to Ohio Oil Company, the purchaser of the oil from the lease, was in the month of September, 1957. There was evidence that two tanks of oil were hauled from the premises after September, 1957, and prior to January, 1958, but it was neither returned nor the royalty oil paid for. The record is devoid of any proof of production subsequent to the year 1957 until the month of June, 1960. The motor was removed from the pump jack, apparently in March or April, 1958, and was not replaced until about June 18, 1960, so there could have been no production during that period of time.

Don H. Baldwin, Inc., wished to acquire the 1953 lease, but after some inquiry, took a top lease on March 28, 1960. Allen Brothers made some arrangement with Snyder Drilling & Well Servicing Company to put the well back in production upon behalf of all the defendants under the 1953 lease and commenced work on June 17, 1960. On June 18, 1960, a notice of lease termination was served by Baldwin and the lessor upon one of the Snyder partners, directed to both the Snyder and Allen partnerships.

While the primary term of the lease is indefinite, the parties proceed upon the theory that the well was drilled within the primary term. None contend that the primary term is still in existence. Therefore, the lessee's right to operate must necessarily exist, if at all, under the "thereafter" clause in the lease. It provides that the lease shall be in force for the primary term "and as long thereafter as oil, gas or other mineral is produced from said land hereunder." We are not troubled with the usual problem of whether the well is producing, or is capable of producing, oil in sufficient or paying quantities to continue the lease in

force under the "thereafter" clause since plaintiff does not raise that issue.

The basic question presented is whether cessation of production after the expiration of the primary term terminates the lease. The general rule has been stated in the following language: "If the lessee by producing oil or gas within or at the end of the definite term, has satisfied the contingency upon which the lease is to continue beyond that term, it is the plain intent of the 'thereafter' clause that the lease shall continue as long as oil or gas continues to be produced in paying quantities. From this it is clearly inferred that if production ceases the lease is at an end, although a temporary cessation of production does not terminate the lease under this limitation." 2 Summers, Oil and Gas, sec. 305.

Most jurisdictions hold that cessation of production does not *ipso facto* terminate a lease where the shutting down is temporary, but there is a wide divergence of interpretation of a period deemed "temporary". For example, in *Kahm* v. *Arkansas River Gas Co.* 122 Kan. 786, 253 Pac. 563, cessation for six months was held not to be temporary and that the lease had terminated; while in *Saulsberry* v. *Siegel,* 221 Ark. 152, 252 S.W.2d 834, cessation of production for a period of 3 or 4 years was held to be temporary. There is also a difference of opinion as to the circumstances which render the suspension of production temporary. In the *Kahm* case lack of pipeline facilities was held to be no excuse, while in *Saulsberry* the derrick was destroyed by fire. However, the court in the latter case may have been influenced by the fact that after the well was put back in production the lessor accepted royalties.

A somewhat similar situation was presented to this court in *Spies* v. *DeMayo,* 396 Ill. 255. A well was drilled in the summer of 1939, oil was produced and shipped until March 27, 1940. The engine was removed from the pumping unit about November 1, 1940. The purchaser of the oil

refused to pay because of the title. Extensive litigation commenced in 1942 which involved both the fee and the leasehold. It was contended that by removal of the engine and failure to produce, the well was abandoned. This court held that not only had the lease terminated but that the equipment left on the lease became the property of the lessor, and said, at pages 274 and 275: "An oil and gas lease may be abandoned by cessation of operations for an unreasonable length of time. * * * There was abandonment in fact as well as in law. * * * Cessation of operations for a considerable period of time, if unexplained, may be sufficient to warrant a declaration as a matter of law that an oil lease has been abandoned."

We believe the proper rule to be that temporary cessation of production after the expiration of the primary term is not a cessation of production within the contemplation and meaning of the "thereafter" clause if, in the light of all surrounding circumstances, reasonable diligence is being exercised by the lessee to continue production of oil or gas under the lease. See *Lamb* v. *Vansyckle,* 205 Ky. 597, 266 S.W.2d 253.

In this case the well was shut down for over two years. The motor was removed from the pump jack without any explanation. The only reasons given for failure to produce were that Allen Brothers were in financial trouble, that it took time to contact the numerous working-interest owners and that the weather was bad at times. These circumstances fail to show reasonable diligence in producing the well and the trial court was entirely justified in holding that the lease had terminated. Once it was terminated it could not be revived by commencing production almost simultaneously with plaintiff's action to declare the lease void.

The lessor was under no duty to give notice to the lessees of his intention to cancel the lease for failure to continue production. The lease terminated under the terms

of the "thereafter" clause. See 3 Summers, Oil and Gas, sec. 469.

The decree of the circuit court of Lawrence County is affirmed.

*Decree affirmed.*