329 S.E.2d 88

**Richard M. WARNER, et al.**

v.

**HAUGHT, INC., etc.**

**No. 16184.**

Supreme Court of Appeals of West Virginia.

April 11, 1985.

Sponaugle, Sponaugle & Bowers, Jeffrey S. Bowers, Franklin, for appellants.

Renner, Everett, Bush & Powell, Richard A. Bush, William G. Powell, Parkersburg, for appellee.

McGRAW, Justice:

This is an appeal from an order of the Circuit Court of Pendleton County dated February 9, 1983, constituting the final judgment in eight separate civil actions brought in that court and subsequently consolidated pursuant to Rule 42(a) of the West Virginia Rules of Civil Procedure. The appellants, plaintiffs in four of the actions below, assert several points of error in support of their request for reversal of the circuit court's final order. Upon the findings and conclusions which follow, the ruling of the circuit court is reversed.

I

During the month of November, 1979, the appellants leased, by separate instruments, various tracts of land in Pendleton County to D. & H. Oil Company, for oil and gas exploration and development. Each lease provides for a primary term of ten years. Further, in each lease, the lessee agreed to pay an annual delay rental, in advance, until a well yielding a royalty to the lessors is drilled on the premises. The leases contain no provision setting forth a remedy or course of action in the event of late payment or nonpayment of the delay rental. Each of the appellants, however, alleges that the agent for the lessee represented to them at the time of the execution of each lease, that if the terms were not complied with, including the rental provision, the lease would be null and void. Each lease does contain a surrender clause which permits the lessee, or its successors or assigns, to cancel the lease at any time, upon the payment of one dollar to the lessor. In May of 1980, all of the subject leases were assigned by D. & H. Oil Company to the appellee, Haught, Inc., and shortly thereafter, recorded in the Pendleton County Clerk's office.

In 1981, the appellee failed to make the delay rental payments on any of the subject leases when due. After the expected payments became overdue by a month or longer, all but one set of appellants separately mailed to the appellee or the original lessee, D. & H. Oil Company, by regular

mail, notices of cancellation advising that the lessors considered the leases to be null and void due to the failure to pay delay rentals when due. On January 21, 1982, prior to the dates of some of the above-mentioned notices, the appellee mailed delay rental checks in the appropriate amounts to all of the appellants. The checks were back-dated to the respective due dates under each lease. The appellants, in all instances, refused the delay rental checks.

In February and March of 1982, each set of appellants initiated a separate civil action in the Circuit Court of Pendleton County, seeking a declaratory judgment declaring their lease forfeited and abandoned due to the appellee's failure to make timely payment of the delay rental, and removing the lease as a cloud upon the title to their real estate. The appellee answered the civil actions setting forth that the appellants had no right to the relief sought, principally because they had failed to comply with the provisions of West Virginia Code § 36–4–9a (1985 Replacement Vol.). Ultimately, counsel for both sides submitted motions for summary judgment, with supporting affidavits and memoranda, on behalf of their respective clients. On February 9, 1983, the circuit court issued a memorandum order denying the appellants' motion and granting the appellee's motion, thereby dismissing the appellants' complaints. It is from that final order that the appellants have brought this appeal.

## II

The central issue presented to this Court is whether the lease cancellation provision of West Virginia Code § 36–4–9a (1985 Replacement Vol.) applies to the oil and gas leases which are the subject of this appeal. The statute provides, in pertinent part, that:

> Except in the case where operations for the drilling of a well are being conducted thereunder, any undeveloped lease for oil and/or gas in this State hereafter executed in which the consideration therein provided to be paid for the privilege of postponing actual drilling or development or for the holding of said lease without commencing operations for the drilling of a well, commonly called delay rental, has not been paid when due according to the terms of such lease, or the terms of any other agreement between lessor and lessee, shall be null and void as to such oil and/or gas unless payment thereof shall be made within sixty days from the date upon which demand for payment in full of such delay rental has been made by the lessor upon the lessee therein, as hereinafter provided, except in such cases where a bona fide dispute shall exist between lessor and lessee as to any amount due or entitlement thereto or any part thereof under such lease.

> No person, firm, corporation, partnership or association shall maintain any action or proceeding in the courts of this State for the purpose of enforcing or perpetuating during the term thereof any lease heretofore executed covering oil and/or gas, as against the owner of such oil and/or gas, or his subsequent lessee, if such person, firm, corporation, partnership or association has failed to pay to the lessor such delay rental in full when due according to the terms thereof, for a period of sixty days after demand for such payment has been made by the lessor upon such lessee, as hereinafter provided.

> The demand for payment referred to in the two preceding paragraphs shall be made by notice in writing and shall be sufficient if served upon such person, firm, partnership, association, or corporation whether domestic or foreign, whether engaged in business or dissolved, by United States registered mail, return receipt requested, to the lessee's last known address.

> A copy of such notice, together with the return receipt attached thereto, shall be filed with the clerk of the county commission in which such lease is recorded, or in which such oil and/or gas property is located in whole or in part, and upon payment of a fee of fifty cents for each such lease, said clerk shall permanently file such notice alphabetically un-

der the name of the first lessor appearing in such lease and shall stamp or write upon the margin of the record in his office of such lease hereafter executed the words "canceled by notice"; and as to any such lease executed before the enactment of this statute said clerk shall file such notice as hereinbefore provided and shall stamp or write upon the margin of the record of such lease in his office the words "enforcement barred by notice."

As the record indicates, none of the appellants complied with, nor do they claim to have complied with, the "demand for payment" requirements of the statute.[1] Rather, the appellants contend that the above-quoted provision applies only to "or" type oil and gas leases. Further, the appellants assert that the leases in question are not "or" type leases, but are "unless" type leases, and therefore, beyond the purview of the statute.

A brief review of the general characteristics and primary distinctions between these two classical types of oil and gas leases is warranted at this point. To begin, the "or" and "unless" nomenclature stems from the effect and obligations created under the drilling and rental clauses of typical leases.[2] In an "or" lease, the lessee covenants to do some alternative act, usually to drill a well or to pay periodic rentals, to maintain the lease during its primary term. Simply put, the lessee must "drill or pay". Conversely, the lessee in an "unless" lease does not covenant to drill a well or pay rentals. However, if the lessee does neither within the time intervals specified therein, the lease automatically expires by its own terms. In typical form, "if" no well is drilled, the lease terminates "unless" rentals are paid. *See* 3 H. Williams, *Oil and Gas Law* §§ 605 & 606 (1984); R. Donley, *The Law of Coal, Oil and Gas in West Virginia and Virginia* §§ 80 & 83 (1951).

As further elaborated upon by one authority:

The result is that the "unless" clause is construed as a clause of special limitation whereas the "or" clause is construed as a clause of condition. The consequences of this construction of the two clauses include the following:

(1) If the lease contains an "unless" clause, no affirmative act is required on the part of the lessee if he wishes to terminate the lease before the expiration of the primary term; failure to commence a well or to pay rentals on or before the rental paying date will cause the lease to expire. On the other hand, if the lease contains an "or" clause, some affirmative act is required, *viz.*, a surrender of the lease, if the lessee wishes to terminate the lease before the expiration of the primary term.

(2) Termination of the lease is automatic by operation of the "unless" clause; in the case of the "or" clause, some action by the lessor is required to effect a termination.

(3) Since the termination of the lease by operation of an "unless" type drilling and rental clause is automatic, equitable rules against forfeiture are not applicable to a determination of whether the lease has expired. On the other hand, since the termination of the lease by operation of an "or" type drilling and rental clause requires entry by the lessor, and, in the case of a dispute, judicial determination of the rights of the parties, equitable rules against forfeiture are applicable to a determination of whether the lease should be canceled. 3 H. Williams, *supra* at § 606 (footnote omitted).

---

1. In some cases, notices of cancellation were sent, but apparently not as an attempt to comply with the statute. In any event, in all instances the delay rentals were tendered within the sixty-day period provided under the statute.

2. We note, however, that it is not the labeling, but rather the legal effects and obligations created by the language of the lease which is of primary importance. This point is of particular relevance in cases such as this one simply because the language of many leases does not track the form contained in classical "or" and "unless" clauses.

Returning to the immediate inquiry, whether the leases involved in the instant case are, in effect, "or" leases or "unless" leases, we begin with the pertinent language. Each lease contains the following drilling and rental clause:

The said Lessee covenants and agrees to pay rental at the rate of $1.00 per acre, per year, plus $2.00 Bonus per acre the first year ... in advance, ... until, but·not after, a well yielding royalty to the Lessors is drilled on the leased premises, and any rental paid for time beyond the date of completion of a gas well shall be credited upon the first royalty due upon the same and all rentals shall cease after the surrender of this lease as hereinafter provided for.

The surrender clause referred to above, as contained in each lease, states that:

Upon payment of one ($1.00) Dollar at any time, by the party of the second part [the lessee], or by its successors and assigns it or they shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under any by virtue of its terms shall cease and determine, and this lease becomes absolutely null and void.

■ The appellants cite to the wording in the drilling and rental clause, "rental ... in advance, ... until, but not after, a well yielding royalty to the Lessors is drilled...." This language, according to the appellants, creates, in effect, an "unless" lease which automatically terminates upon failure to pay the delay rental. Even applying the principle that terms are to be construed most strongly against the party who solicited and prepared the lease,[3] in this case the lessee, we cannot agree with the appellants' construction.

To begin, an "unless" type lease places no obligation upon the lessee. However, in the instant leases the terms clearly provide that the lessee covenants and agrees to pay rental. This language does not create a special limitation upon the primary term, but rather an absolute obligation to drill a well or pay rental in advance of each year of the primary term. Failure to do one of these acts is an actionable breach of contract.

Additionally, as previously quoted, the subject leases contain a surrender clause permitting the lessee to voluntarily surrender the leases, thereby terminating further obligations. In delineating the distinctions between "or" and "unless" leases, Professor Donley has discussed the relevance of the "surrender clause," where he observes that:

With [the unless] type of clause the lessee does not need the protection of a surrender clause in order to escape liability for failure to drill.... The lessee may simply do nothing and let his leasehold estate terminate and there is an end to the relationship between the parties. However, in the drill or pay type of clause, the lessee does need the device of a surrender clause in order that he may avoid liability for nonperformance of either of his alternative promises where it appears that the field is a nonproductive one. R. Donley, *supra,* at § 73.

■ We conclude that each lease in question, by its written terms, clearly obligated the lessee to do one of three acts during the primary term: (1) drill a productive well; (2) pay delay rentals; or (3) surrender the lease. Under the effect of these alternative obligations, the leases would not automatically terminate by the failure to seasonably tender the delay rentals. However, another facet of this case, other than the written terms of the leases, is also relevant to the question of the applicability of West Virginia Code § 36–4–9a (1985 Replacement Vol.). Closely related to the issue of the meaning of the express language of the subject leases is the question regarding the effect of the alleged oral statements to the appellants by the lessee's agent to the effect that failure to pay rent-

---

**3.** *See, e.g., Martin v. Consolidated Coal and Oil Corporation,* 101 W.Va. 721, 133 S.E. 626 (1926); *United Fuel Gas Company v. Cabot,* 96 W.Va. 387, 122 S.E. 922 (1924); *Eclipse Oil Company v.* *South Penn Oil Company,* 47 W.Va. 84, 34 S.E. 923 (1899); *Bettman v. Harness,* 42 W.Va. 433, 26 S.E. 271 (1896).

als on time would render the leases null and void. If admissible, and found to have been actually made, these oral statements would, in effect, change the character of these leases to resemble "unless" leases, automatically terminating upon failure to pay the rentals on time.

■ In Syllabus point 3 of *Iafolla v. Douglas Pocahontas Coal Corporation*, 162 W.Va. 489, 250 S.E.2d 128 (1978), this Court restated the well established rule that, "A written contract merges all negotiations and representations which occurred before its execution, and in the absence of fraud, mistake, or material misrepresentations extrinsic evidence cannot be used to alter or interpret language in a written contract which is otherwise plain and unambiguous on its face."

■ The appellants' allegations of the parol representations made to them, which, for the purposes of the summary judgment motions were deemed to be true, raise factual issues relating to the possibility of mistake or material misrepresentation. Our discussion in Part IV which follows, relating to the impropriety of granting motions for summary judgment where material issues of fact are presented, applies to the circuit court's determination that these oral representations were not admissible. *See* 6 *Moore's Federal Practice* ¶ 56.17[43] (1982) ("[I]f oral testimony is admissible under some exception to the [parol evidence] rule and there is a genuine factual dispute concerning such a matter, the motion for summary judgment should be denied."). Accordingly, we reverse the circuit court's grant of the appellee's summary judgment motion on the parol evidence issue.

Therefore, because these leases may, upon remand, be found to include an automatic termination provision added by the parol representations, we specifically address whether the notice and demand requirements provided under section 36–4–9a are applicable to such "unless" type leases. For the following reasons, we find "unless" leases to be unaffected by the notice and demand provisions.

First of all, the statute itself, in spite of its initial reference to "any" lease, manifests an intent that it was designed to deal with the rental collection problems inherent in the "or" type lease. In the final paragraph of the statute, the legislature declared that, "The continuation in force of any such lease after demand for and failure to pay such delay rental ... is deemed by the legislature to be opposed to public policy against the general welfare." This "continuation in force after failure to pay" problem the legislature sought to alleviate has never been a problem in "unless" type leases, which automatically extinguish upon failure to pay.

Prior to the enactment of section 36–4–9a in 1943, when a lessee was in default on rental obligations under an "or" type lease that did not contain a forfeiture clause for the benefit of the lessor, generally, the lessor's sole remedy was a suit, for past due rentals, and the unproductive lease remained in force. In some cases, where the facts were such that a court could find that equitable forfeiture or a declaration of abandonment was appropriate, the lessor could have the lease terminated. The latter two remedies, however, were the exception rather than the rule. Thus, the statute provided an expeditious means, without resort to judicial process, to require lessees in "or" type leases to pay the rentals due under the lease if they did not wish to have the lease canceled under the statute.

Additionally, there is a distinct notion of inconsistency in requiring, in a lease which obligates the lessee to do nothing, notice and demand before *automatic* termination. In this regard, we note that even when contained within "unless" leases themselves, such notice and demand requirements have been held to be void as being "inconsistent and repugnant" or "irreconcilable" with the special limitation intent of the leases. *See, e.g., Clovis v. Carson Oil & Gas Company*, 11 F.Supp. 797 (E.D. Mich.1935); *Richfield Oil Corporation v. Bloomfield*, 103 Cal.App.2d 589, 229 P.2d 838 (1951); *McDaniel v. Hager-Stevenson Oil Company*, 75 Mont. 356, 243 P. 582 (1926); *Lewis v. Grininger*, 198 Okla. 419, 179 P.2d 463 (1947); *Waddle v. Lucky*

*Strike Oil Company, Inc.*, 551 S.W.2d 323 (Tenn.1977).

Accordingly, we hold that under circumstances that do not permit forfeiture or indicate abandonment, an oil and gas lease binding the lessee to drill a well on the leased premises within a certain period, or, in lieu thereof, make periodical payments of delay rental, and containing no clause of special limitation which would effect an automatic termination of the lease for failure of the lessee to perform one of the specified obligations, is not terminable due to nonpayment of the rental without the lessor's compliance with the notice and demand provisions under West Virginia Code § 36–4–9a (1985 Replacement Vol.). However, leases subject to automatic termination for failure to pay delay rentals are unaffected by these statutory provisions.[4]

### III

The next question presented in this appeal is whether the circuit court erred in ruling that equity would neither require nor permit a forfeiture of the subject oil and gas leases. Although admitting that the application of equitable principles in contract law is rare and discouraged, the appellants assert that, under the circumstances presented, this is perhaps a case where it would be proper. More precisely, the appellant's claim for seeking the equitable remedy of forfeiture centers upon the fact that the delay rental checks for the next annual period under each lease were approximately two months late.

The general disfavor of forfeitures in contractual matters, within the context of oil and gas lease rental clauses, has been previously addressed by this Court.

The failure to make stipulated quarterly payments on the well is not ground for declaration of a forfeiture of the lease, in the absence of a clear and unequivocal stipulation that such failure to pay will forfeit. We have many times declared,

following the rule formulated when chancery courts came into existence, that equity will never lend its aid to enforce a forfeiture. Never to declare or enforce a forfeiture, nor divest an estate or title for violation of a condition subsequent, is an invariable rule of equity, if there be a legal remedy. Under such circumstances, a court of equity utterly declines to touch the case, and leaves the party to his legal remedies. "Equity abhors a forfeiture."

Plaintiffs had their legal remedy for the enforcement of the quarterly payments, and in the answer defendant proffers to pay, upon an ascertainment of the amount, claiming that plaintiffs should account for the gas used from the well in one of the houses, which use was not authorized in the lease contract. The lease cannot be forfeited because of nonpayment of the quarterly payments, under the circumstances shown by the evidence. In *Reserve Gas Co. v. Carbon Black Manufacturing Co.*, 72 W.Va. 757, 79 S.E. 1002, it is said:

"An oil and gas lease, binding the lessee to drill a well on the leased premises within a certain period, or, in lieu thereof, make periodical payments of rental or delay money, and containing no clause of forfeitures, is not forfeitable merely by nonpayment of the rental. It can be terminated only by surrender, abandonment, or expiration of the term." *McCutcheon v. Enon Oil & Gas Company*, 102 W.Va. 345, 353, 135 S.E. 238, 241 (1926) (citations omitted).

In the same vein, however, it is well recognized that this Court has modified the rule disfavoring equitable forfeitures to the extent that "forfeiture is favored, when, instead of working a loss or injury contrary to equity, it promotes justice and equity and protects the owner against the indifference, laches, and injurious conduct of the lessee." *Doddridge County Oil & Gas*

---

**4.** The appellants also challenge the notice and demand provisions of West Virginia Code § 36–4–9a upon intertwined constitutional and public policy grounds. We find no merit to their argument. The notice and demand provisions bear a rational relationship to the legitimate state goal discussed herein.

*Company v. Smith,* 154 Fed. 970, 978 (N.D.W.Va.1907) (citing cases therein).

■ Within these guiding principles, we cannot conclude that, under the undisputed but limited facts, the circuit court erred in its determination that forfeiture was an inappropriate remedy. Though the payments were late, they were tendered within the time required after demand under West Virginia Code § 36–4–9a (1985 Replacement Vol.). Further, the record indicates that the first two annual payments under these leases were apparently made on time. Without the development of clear and convincing circumstances to support a forfeiture in equity, the parties should initially pursue their remedies at law. *See* Syl. pt. 2, *Bethlehem Steel Corporation v. Shonk Land Company,* 169 W.Va. 310, 288 S.E.2d 139 (1982). This is particularly true in cases of late rentals, where West Virginia Code § 36–4–9a (1985 Replacement Vol.) supplies an expeditious method to enforce the lessee's covenant to pay.[5]

■ However, at the same time, oil and gas lessees may not subvert the section 36–4–9a provision into a device to constantly defer or avoid timely payment of delay rentals. Accordingly, we hold that under West Virginia Code § 36–4–9a (1985 Replacement Vol.), an oil and gas lessee's repeated failure to pay rentals on time, thereby forcing the lessor to repeatedly seek relief under that section, may permit a finding that the indifference, laches or injurious conduct of the lessee justifies a declaration of equitable forfeiture of the leasehold. In the instant case, however, the circuit court did not err in finding forfeiture unjustified at the time in question.

## IV

Finally, the appellants ask us to determine whether the circuit court erred in finding that the appellee had not abandoned the leases in question.

■ The doctrine of abandonment recognizes that, upon a proper showing of circumstances indicating intent by the lessee to abandon, the law may effect a surrender of the leased estate. As summarized in *Sult v. Hochstetter Oil Company,* 63 W.Va. 317, 329, 61 S.E. 307, 313 (1908):

Whether a lease has been terminated by abandonment on the part of the lessee, and acceptance of, or re-entry upon, the premises by the lessor, is a question of intention. Though a lease so terminated is said to have come to its end by operation of law, the legal result arises from the acts of the parties. The intention on the part of the lessee to abandon, and on the part of the lessor to resume possession of the premises on his own account, and treat the lease as having been surrendered, ascertained from their acts and conduct, is the test. It is not an express surrender, but a surrender which the law declares and enforces when the tenant leaves the premises with intention not to return thereto and the landlord takes possession of the same with intention to release the tenant from the obligation of his contract and refuses to let him come again into possession of the property.

Thus, a lessee's intention to abandon may be implied from circumstances clearly indicating this state of mind. *See Berry Energy Consultants and Managers, Inc. v. Bennett,* 175 W.Va. 92, 331 S.E.2d 823, ——, slip op. at 9 (1985) (citing *McCutcheon v. Enon Oil & Gas Company, supra*).[6] We further note that the element of intent is the principal distinguishing factor between abandonment and forfeiture. Abandonment "rests upon the intention of the lessee to relinquish the premises, and is therefore a question of fact for the jury; while a forfeiture does not rest upon an intent to release the premises, but is an enforced release." *Garrett v. South*

---

**5.** We note that no claim for equitable forfeiture is necessary when nonpayment occurs under an "unless" lease.

**6.** Although the facts presented by the appellants do not trigger the "rebuttable legal presumption" of abandonment recently enacted as part of West Virginia Code § 36–4–9a and discussed in *Berry Energy Consultants and Managers* cited above, they are nevertheless entitled to proceed with an abandonment claim without the aid of the presumption.

*Penn Oil Co.,* 66 W.Va. 587, 596, 66 S.E. 741, 745 (1909) (quoting *Thornton on the Law of Oil and Gas* § 137).

█ As previously mentioned, all questions in this case were determined upon cross-motions for summary judgment, including the question of whether the lessee abandoned the leased minerals. However, "the well-settled rule is that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." 6 *Moore's Federal Practice* ¶ 56.13 (1983) (citing cases under the federal rule). This Court has previously addressed this matter in *Haga v. King Coal Chevrolet Company,* 151 W.Va. 125, 150 S.E.2d 599 (1966), where we held in Syllabus point 3 that, "A motion by both plaintiff and defendant for summary judgment under Rule 56, R.C.P. does not constitute a determination that there is no issue of fact to be tried and if a genuine issue of material fact is involved both motions should be denied." *See also Lake v. Potomac Light & Power Company,* 150 W.Va. 641, 645–46, 149 S.E.2d 230, 233 (1966); *Aetna Casualty and Surety Company v. Federal Insurance Company,* 148 W.Va. 160, 173, 133 S.E.2d 770, 778 (1963).

The record indicates that the parties never came to terms upon the question of whether intent to abandon ever existed. Although they were in apparent agreement on some pertinent facts, for instance, that the rental checks were indeed late, and that the appellants did intend to repossess the leased estates, they remained in disagreement over the fundamental issue of the lessee's intent.

█ "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty and Surety Company v. Federal Insurance Company,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Notwithstanding the fact that both sides moved for summary judgment, the material issue of fact regarding the intent of the appellee to abandon, the very essence of an abandonment claim, precluded a proper determination of this aspect of these actions. The parties may not, by filing cross-motions, use summary judgment to try a cause of action which turns upon a genuinely disputed factual issue. Likewise, the trial judge should resist the temptation to try cases in advance on motions for summary judgment, even where the evidence indicates a directed verdict will likely result. *See* Syl. pt. 1, *Masinter v. Webco Company,* 164 W.Va. 241, 262 S.E.2d 433 (1980).

Accordingly, we hold that the circuit court erred in granting the appellee's motion for summary judgment on the appellants' claim of abandonment. The appellants have a right to introduce evidence at trial to support their allegations of abandonment.

For the foregoing reasons, the final ruling of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed.