RALPH H. EDWARDS, Plaintiff-Appellant and Counterdefendant-Appellant, v. THERESA M. DHOM et al., Defendants-Appellees (J. E. St. Pierre, Sr., et al., Counterplaintiffs-Appellees; R. P. Dahman et al., Counterdefendants-Appellees).

Fifth District    No. 5—85—0539

Opinion filed April 20, 1987.

H. Carroll Bayler, of Louisville, for appellant.

Patrick L. Duke, of Smith, McCollum & Riggle, of Flora, for appellee Union Oil Company.

Lawrence Eaton, of Eaton & Eaton, of Newton, for appellees Joseph E. St. Pierre, Jr., and Joseph E. St. Pierre, Sr.

Peter A. Morse, of Olney, for appellee pro se.

Ray Fehrenbacher, of Fehrenbacher Law Offices, of Olney, for appellees Ray Fehrenbacher and Theresa Dhom.

JUSTICE JONES delivered the opinion of the court:
Central to this case is the question whether certain oil and gas leases executed in 1960 and 1961 in favor of the plaintiff, Ralph H. Edwards, by the defendant Theresa Dhom and others had expired prior to the execution of subsequent oil and gas leases involving the same property in favor of the defendant Joseph E. St. Pierre, Jr., in 1974, 1975, and 1982.

The plaintiff brought suit in 1976 against Theresa Dhom and Joseph E. St. Pierre, Jr., as well as the defendants Joseph E. St. Pierre,

Sr., and Union Oil Company, seeking damages and other relief associated with the operation of the oil and gas lease known as the "Dhom lease," obtained on May 28, 1960, from Harry Dhom, since deceased, and Theresa Dhom, owner of the surface and a part of the mineral interest. As we have indicated, other owners of the mineral interest in the property executed oil and gas leases to it in favor of the plaintiff at approximately the same time. In a two-count counterclaim and third-party complaint filed in June of 1982, the St. Pierres, Theresa Dhom, Peter Morse, and Ray Fehrenbacher sought to compel in the first count the release of the oil and gas leases executed in 1961 and 1962 in favor of the plaintiff and, in the second count, to quiet title to those executed in 1974, 1975, and 1982 in favor of Joseph E. St. Pierre, Jr. The counterclaim and third-party complaint alleged, *inter alia*, that each of the oil and gas leases executed in 1961 and 1962 was for a fixed primary term, as stated in each lease, and provided for a secondary term for as long after the primary term as oil and gas was produced; that after the expiration of the primary term of each lease, production of oil and gas stopped, no oil and gas having been produced from any of the lands described in the leases for more than two years after October of 1971; and that, as a result, all of the oil and gas leases in question executed in 1961 and 1962 had expired and terminated by their own terms and were no longer of any force and effect. In November of 1982 the counterclaimants and third-party plaintiffs moved for summary judgment on both counts of the counterclaim and third-party claim, which motion was supported by the affidavit of James Dhom, the son of Theresa Dhom, and the affidavit of J. E. St. Pierre, Sr.

James Dhom stated in his affidavit that the plaintiff had commenced oil and gas drilling operations on the property in question which had resulted in the production of commercial quantities of oil and gas and that at the end of 1968 the plaintiff had drilled a total of six wells on the property, referred to as the Dhom No. 1, Dhom No. 2, Dhom No. B-3, Dhom No. 4, Dhom No. 5, and Dhom No. 6. The affiant stated that the plaintiff had plugged and abandoned the Dhom No. B-3 on or about April of 1973 and that the other five wells were plugged and abandoned in July of 1974. He stated further that prior to the date of the plugging of the wells, there had been no production from any of the wells and no operations for the production of oil and gas conducted with respect to any of the wells for about two years. J. E. St. Pierre, Sr., stated in his affidavit that on or about January 26, 1973, he had purchased all right, title, and interest of the plaintiff in and to the six wells in question at a public sale from John W. Callahan, trustee of the bankrupt estate of Ralph Hardy Edwards, the plaintiff in the instant

case, in the United States District Court for the Eastern District of Illinois. The affiant stated that after purchasing the Dhom wells, the affiant did not produce any oil and gas or take any steps to attempt to produce oil and gas nor did he intend to produce any oil or gas on any of the land described in the oil and gas leases because the other owners of the working interest would not contribute their part of the costs and none of the wells were in operating condition. After describing the condition of each of the six wells, the affiant stated that in 1974 he had caused five of the six wells to be plugged and had abandoned all attempts to produce oil and gas and removed the personal property from the Dhom leases. The remaining well, the Dhom No. B-3, had been plugged, according to the affiant, on or about April 30, 1973, by the plaintiff. By the end of 1974 all the oil and gas wells on the Dhom lease had been plugged and abandoned either by the affiant or the plaintiff and no operations for oil and gas production were undertaken on the land until 1975. Plugging affidavits for each of the six wells, signed accordingly by the affiant or the plaintiff, were attached as exhibits to this affidavit. In 1974 the affiant and his son, J. E. St. Pierre, Jr., began to lease that part of the property on which the Dhom No. 4 was located and, after obtaining oil and gas leases from all of the owners of the minerals, redrilled that well and started to produce oil and gas from it, a well still producing. The first oil produced from that well by the St. Pierres was sold to Union Oil Company of California on September 17, 1985. The affiant stated that there was no activity that might or could have produced oil or gas from the property in question, on which the Dhom wells Nos. 1 through 5 are located, from January 26, 1973, until the redrilling of the Dhom No. 4 in 1975. On March 31, 1982, according to the affiant, he leased the property on which the Dhom No. 6 is located; he stated that there had been no production or activities to produce oil and gas from it since 1974. The affiant stated further that on December 11, 1974, the Oil and Gas Division of the Department of Mines and Minerals of the State of Illinois had notified him by letter, attached to the affidavit as an exhibit, to produce or plug the Dhom wells Nos. 1, 2, 4, 5, and 6.

Following a hearing on the motion for summary judgment on December 13, 1982, the trial court, Judge Joseph Fribley presiding, found in an order dated December 23, 1982, and filed on December 27, 1982, that all of the interest of the owners of the leasehold estate in 25 oil and gas leases, attached as exhibits to the counterclaim and third-party complaint, including the lease from Harry and Theresa Dhom to the plaintiff executed on May 28, 1960, had terminated and become void according to their terms. The trial court ordered the leases released

and title to the leases executed in 1974, 1975, and 1982 by Theresa Dhom and others in favor of J. E. St. Pierre, Jr., confirmed in the name of J. E. St. Pierre, Jr., free and clear of all purported claims of the plaintiff and others named. Union Oil Company was directed to make payment to certain of the counterplaintiffs for any and all oil and gas that had been or may have been produced from the land described in the leases with respect to the property in question and to make payment for royalty interest to Theresa Dhom and other owners of the minerals in the land in question. At the conclusion of the hearing the court stated, "I now have examined the leases shown as Exhibits 1 through 25 and find that each of them have the 60-day clause." The clause to which the court refers appears in paragraph five of each lease and states:

> "If, prior to discovery of oil, liquid hydrocarbons, gas or their respective constituent products, or any of them, on said land or on land pooled therewith, lessee should drill and abandon a dry hole or holes thereon, or if, after discovery of oil, liquid hydrocarbons, gas or their respective constituent products, or any of them, the production thereof should cease from any cause, this lease shall not terminate if lessee commences additional drilling or reworking operations within sixty (60) days thereafter."

The lease executed by Harry and Theresa Dhom on May 28, 1960, provides that the lease shall remain in effect for a primary term of eight months "and as long thereafter as oil, liquid hydrocarbons, gas or their respective constituent products, or any of them is produced from said land or land with which said land is pooled." In response to the plaintiff's assertion at the conclusion of the hearing that there was no cessation under the oil and gas leases, the court stated: "Well, you're [sic] reply affidavit, not having disagreed with anything about the fact there was 60-day cessation in either your affidavit or the reply, I guess that matter becomes moot as well since you have not disagreed with it." Having granted the motion for summary judgment, the court denied the plaintiff's subsequent motion to reconsider, vacate, and set it aside.

The plaintiff's four-count complaint was amended at various times during the course of this litigation. Count IV of the plaintiff's amended complaint filed on May 17, 1977, was directed against the defendant Union Oil Company of California, which moved for and obtained summary judgment as to that count, the court having found in its order dated July 22, 1983, and filed July 25, 1983, that the defendant Union Oil Company was a disinterested stakeholder on the cause and that the judgment filed on December 27, 1982, was determinative of all issues as between Union Oil, the plaintiff, and all other counterdefendants in

the counterclaim and third-party complaint. Union Oil was ordered to pay over certain funds held in suspense by it on account of its purchase of oil from the property in question to the St. Pierres, Peter Morse, and Ray Fehrenbacher. On April 8, 1985, the defendants moved to dismiss counts I, III, IV, and V of the plaintiff's amended five-count complaint filed April 4, 1985. After a hearing on the defendant's motion, the trial court dismissed counts II, III, IV, and V of the amended complaint filed April 4, 1985, with the observation that "[t]he stating of new causes of action is untimely and will not be allowed." Count I of this amended complaint for alleged breach of contract by the defendant Joseph E. St. Pierre, Sr., was tried before the court on July 16 and 17, 1985. Count I alleged that:

"[O]n or about the 7th day of July, 1973, the Plaintiff and the Defendant, JOSEPH E. ST. PIERRE, SR., entered into an oral agreement whereby the Defendant would operate and oversee the oil and gas wells drilled and completed by the Plaintiff under terms and conditions not material to the issues of this Complaint."

The lease upon which the plaintiff relies in this count is that executed in his favor by Harry and Theresa Dhom on May 28, 1960. At the trial of this issue a "Pooling Declaration" dated August 18, 1961, was admitted into evidence as plaintiff's exhibit No. 25, which unitizes 14.25 acres of the Dhom lease executed on May 28, 1960, and 5.75 acres of the Kerner lease, executed in favor of the plaintiff by Anna Kerner on August 19, 1960. The Kerner lease itself was not admitted into evidence. The Dhom No. B-3 was the well located on the property described in the pooling agreement. James Sublett, an independent oil operator called as a witness by the plaintiff, testified on cross-examination that the Union Oil Company was purchasing the oil from the six wells in question and that the date of the last sale of oil produced from Dhom No. 1 was 1965; from Dhom No. 2 was May 1969; from Dhom No. B-3 was September 1971; from Dhom No. 4 was September 1965; and from Dhom No. 5 was December 1968. There was no record of any sale of oil from the Dhom No. 6, the drilling permit for which was dated September 9, 1966. On cross-examination the plaintiff testified that the date on which the Dhom No. B-3 was plugged was the last date on which oil was produced on the property described in plaintiff's exhibit No. 25, the pooling declaration for the Dhom No. B-3. On direct examination the plaintiff testified that the Kerner lease was producing when Mr. St. Pierre plugged the Dhom wells and was still producing at the time of trial under the original lease. There was testimony at the hearing that the plaintiff had assigned his interest in the Dhom lease to

Clarence and Elena Ratmeyer on September 15, 1965, and that the Ratmeyers had transferred their interest in the lease to the plaintiff on August 15, 1973. At the conclusion of the plaintiff's evidence, the defendant moved for judgment in his favor. The trial court, Judge Huber presiding, ruled in favor of the defendant on the basis of Judge Fribley's prior ruling that the plaintiff's lease had terminated because of nonproduction. In its order entered July 17, 1985, in favor of the defendant at the close of the plaintiff's evidence, the trial court found: "The Court has considered the weight of evidence, weighed the credibility of evidence and quality of the evidence [*sic*] does find that Plaintiff has not established his cause by preponderance of the evidence[,] the Court having given full faith and credit to the order of Judge Joseph Fribley entered Dec. 23, 1982." The trial court ordered "Plaintiff['s] Complaint and all Counts thereof" dismissed with prejudice.

Plaintiff has appealed raising eight issues for review, which we quote: (1) "The issue is whether the trial court ruled correctly in granting summary judgment of the Third Party Complaint and Counterclaim, Counts I and II"; (2) "Did the trial court rule correctly in denying Plaintiff's Motion to file an amendment to the Amended Complaint"; (3) "Did the trial court rule correctly in dismissing Counts I, II and III of the Amended Complaint"; (4)"Did the trial court rule correctly in dismissing Counts II, III, IV and V of the Amended Complaint filed April 4, 1985"; (5)"Did the trial court rule correctly on Plaintiff's Motion to Reconsider, Vacate and Set-aside Order entered on May 13, 1985 on Counts II, III, IV, and V of the Amended Complaint"; (6) "Did the trial court rule correctly in his refusal to review and amend the interlocutory summary judgment order entered by Judge Fribley on December 13, 1982"; (7) "Did the trial court rule correctly that there was not an implied contract that Joseph E. St. Pierre, Sr. was operating the lease for Ralph H. Edwards"; (8) "Did the trial court rule correctly in his Order for defendants at close of Plaintiff's evidence that he gave full faith and credit to the Order of Judge Joseph Fribley entered December 23, 1982 and that Judge Fribley's Order on December 23, 1982 was binding on the trial court." The plaintiff does not address each of these issues separately in the argument portion of his brief.

As we indicated at the outset, the issues distill to the question of whether the leases executed in 1960 and 1961 in favor of the plaintiff had expired by their own terms as a consequence of the cessation of production. The plaintiff relies upon the provision from, apparently, paragraph four of the leases, which grants the lessee the right to pool or unitize the lease and states:

"Drilling operations and production on any part of the pooled acreage shall be treated as if such drilling operations were upon or such production was from the land described in this lease, whether the well or wells be located on the land covered by this lease or not. The entire acreage pooled into a unit shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if it were included in this lease." In his brief the plaintiff asserts that "[t]he wells on the Kerner lease were operating when Plaintiff started operating the Dhom wells and the Kerner lease continued to operate from that time until the day Joseph E. St. Pierre, Sr. testified" at trial. Plaintiff relies on the proposition that "[t]he drilling on and production from the unit perpetuated the entire lease including that portion outside the unit," citing *Scott v. Pure Oil Co.* (1952), 194 F.2d 393. The rule in *Scott* to which the plaintiff refers is the one which states that where a portion of the whole leased acreage is rightfully unitized, production in paying quantities during the primary term of an oil and gas lease, although not from a well on such leased property, maintains the lease in effect as to that part of the leased land which is not included in the unit. In the instant case, however, production during the primary term of the leases executed in 1960 and 1961, which ranges from six weeks to as much as one year and eight months, is not in issue. That term of the leases had, of course, long since passed. Furthermore, the record shows that production on the unit comprised of 14.25 acres of the Dhom lease and 5.75 acres of the Kerner lease had ceased when the plaintiff plugged the well on that unit, Dhom No. B-3, on or about April 30, 1973, if it had not ceased before. The plaintiff cites us to, and we know of, no rule for the proposition that production on acreage outside of the unitized area extends the life of leased property included within the unit. Production on the acreage of the Kerner lease outside the unitized area has no bearing upon the acreage of the Dhom lease inside or outside the unitized area for purposes of maintaining in effect the Dhom lease. The language of the lease in paragraph four relating to "[d]rilling operations and production on any part of the pooled acreage" is of no aid to the plaintiff in the advancement of the proposition that production on the Kerner acreage outside the unitized area served to extend the life of the Dhom lease.

Addressing the question whether cessation of production after the expiration of the primary term terminates the lease, the supreme court in *Gillespie v. Wagoner* (1963), 28 Ill. 2d 217, 219, 190 N.E.2d 765, 766, set forth the general rule as follows:

"'If the lessee, by producing oil or gas within or at the end of

the definite term, has satisfied the contingency upon which the lease is to continue beyond that term, it is the plain intent of the "thereafter" clause that the lease shall continue as long as oil or gas continues to be produced in paying quantities. From this it is clearly inferred that if production ceases the lease is at an end, although a temporary cessation of production does not terminate the lease under this limitation.' 2 Summers, Oil and Gas, see 305."

The court expressed the belief that the proper rule is that temporary cessation of production after the expiration of the primary term is not a cessation of production within the contemplation and meaning of the "thereafter" clause if, in the light of all surrounding circumstances, reasonable diligence is being exercised by the lessee to continue production of oil or gas under the lease. Each of the leases in question here provide that the lease shall remain in effect for the primary term "and as long thereafter as oil, liquid hydrocarbons, gas or their respective constituent products, or any of them is produced from said land or land with which said land is pooled." The record shows that oil produced from the Dhom No. B-3 was last purchased in September of 1971, approximately 1½ years before that well was plugged. The last oil from each of the other four wells that produced, of the six involved, had been purchased some years earlier. On the basis of the record, which we need not discuss further, the cessation of production was not temporary and far exceeded the period of 60 days set forth in the leases.

In order for the plaintiff to prevail, given the nature of his claims—and we need not extend this opinion unduly by detailing the precise nature of each one—it was necessary that the leases in question not have expired. However, under the terms of the habendum clause and the law of Illinois, the leases upon which he based his claims had expired, and the trial court did not err in its rulings, including the granting of summary judgment as to the counterclaim and third-party complaint, there being no issues of any material fact that the leases had so expired. See *Plastics & Equipment Sales Co., Inc. v. DeSoto, Inc.* (1980), 91 Ill. App. 3d 1011, 415 N.E.2d 492.

Affirmed.

WELCH and HARRISON, JJ., concur.